IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MEGHAN FOX, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. _____ |
| v. | |
| OCWEN LOAN SERVICING, LLC, OCWEN FINANCIAL CORPORATION, and CROSS COUNTRY HOME SERVICES, INC., | CLASS ACTION COMPLAINT |
| Defendants. | JURY TRIAL DEMANDED |

## INTRODUCTION

1.      This action involves a classic bait and switch scheme perpetrated by two groups of entities: (a) Defendants Ocwen Loan Servicing, LLC and Ocwen Financial Corporation ("Ocwen") on the one hand, and (b) Defendant Cross Country Home Services, Inc. ("Cross Country") on the other. Plaintiff Meghan Fox, like the similarly situated consumers she seeks to represent, has a home mortgage that is serviced by Ocwen. In June of 2013, she received an unsolicited mailing containing a check that, by all reasonable indications, appeared to come from Ocwen and relate to a refund or rebate on her mortgage.

2.      Unbeknownst to Plaintiff Fox, this check was actually mailed to her from a third party that she had never heard of: Cross Country. Also unbeknownst to her, by endorsing and cashing this check (which was in the nominal amount of $4.00), she was enrolling in a "Home Service" plan sold by Cross Country. This charge was then added to her monthly mortgage payments to Ocwen as a $58.50

1

line item. Even after Plaintiff Fox discovered this inconspicuous and unauthorized fee – after having paid it for approximately one year – Defendants inexplicitly still refused to refund these unauthorized payments.

3.     This relatively simple bait and switch scheme has been wildly successful for Defendants. Cross Country's website, for example, states that "[o]ver the past five years, CCHS has more than doubled its revenues and experienced similar employee growth. We have served millions of home warranties over the past 10 years."[1] Its website also lists Defendant Ocwen Loan Servicing as one of Cross Country's "Major Business Clients."[2] Upon information and belief, Defendants have reaped millions of dollars from unsuspecting customers through this process, and have agreed to share in the proceeds from the sale of these "Home Service" products.

4.     Not only did Defendants enroll consumers in these programs without obtaining their consent, they had no intention to actually provide any of the services they were purportedly offering. This is evidenced by the fact that, as part of their scheme to conceal their conduct, Defendants did not provide proof of enrollment or any other information to Plaintiff to confirm that she was enrolled in this program. As a result, Plaintiff and similarly situated consumers would not know how to take advantage of these services even if they had wanted to do so and had knowingly agreed to be enrolled in them.

---

[1] http://www.cchs.com/cross-country-overview (last visited Oct. 3, 2014).
[2] *Id.*

5.     Plaintiff, on behalf of herself and those similarly situated, brings this action to stop this deceptive conduct, and to secure appropriate relief (including full refunds) for consumers who, like Plaintiff, had no idea that by cashing a check that appeared to come from a mortgage servicer like Ocwen, they would be enrolling in a monthly warranty service provided by a third party that they never intended to use (and, in fact, never did use). As set forth below, Plaintiff seeks relief for Defendants' violation of the federal Racketeer Influenced and Corrupt Organizations Act; the New Jersey Racketeer Influenced and Corrupt Organizations Act; the New Jersey Consumer Fraud Act; the New Jersey Truth in Consumer Contract, Warranty and Notice Act; civil conspiracy; breach of fiduciary duty; breach of the duty of good faith and fair dealing; and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and cost, and because members of the class are citizens of states other than Defendants.

7.     Personal jurisdiction and venue are proper because Plaintiff resides in this District, Defendants directed their bait and switch scheme to Plaintiff and other consumers in this District, and each regularly transacts business within this District. On December 19, 2013, the New Jersey Attorney General announced that it was participating in a multi-state settlement with Defendant Ocwen Financial Corporation related to unauthorized foreclosures and robo-signing that earmarked

approximately $151 million for New Jersey residents.[3]  Thus, Defendants clearly conduct significant business in this state.

## PARTIES

8.    Plaintiff Meghan Fox resides in Oak Ridge, New Jersey. As discussed below, she was unwittingly enrolled in one of Defendants' check-scheme programs and, as a result, has been injured.

9.    Defendant Ocwen Financial Corporation is a Florida corporation with its principal place of business located at 2002 Summit Boulevard, 6th Floor in Atlanta, Georgia.

10.    Defendant Ocwen Loan Servicing, LLC is a Delaware limited liability company with its principal place of business located at 1661 Worthington Road in West Palm Beach, Florida. Upon information and belief, Ocwen Loan Servicing, LLC is a wholly-owned subsidiary of Ocwen Financial Corporation.

11.    Defendant Cross Country Home Services, Inc. is an entity that maintains its headquarters at 1625 NW 136th Ave Suite 200 in Sunrise, Florida.

---

[3] http://nj.gov/oag/newsreleases13/pr20131219b.html (last visited Oct. 3, 2014).

4

## FACTUAL ALLEGATIONS

**A.    Defendants' Deceptive Check Scheme.**

12.    Defendant Ocwen Financial Corporation is a financial services holding company that "is one of the largest mortgage companies in the United States," and is "the fourth largest mortgage servicer in the United States."[4]

13.    As noted above, Defendants will cause Ocwen's mortgage customers to be mailed checks for $4.00, $2.50, or comparable small sum. These mailings, which frequently are enclosed in an envelope that appears to be sent from Ocwen (not Cross Country) lead consumers to reasonably believe they are being provided with a refund or rebate check from their mortgage servicer which relates to their mortgage. Defendants' check solicitation scheme fails to adequately disclose that by cashing the check, customers will actually be enrolled in a home warranty and service plan that will substantially increase the amount of their monthly mortgage payments.

14.    Through their check solicitation scheme, Defendants lock Ocwen's mortgage customers into home warranty and service plans costing upwards of $700 a year for services customers never use because they do not know they are buying them. Upon information and belief, Defendants' do not even provide customers with an agreement or contract to review before "enrolling" them in a plan.

15.    The architect of the scheme is Defendant Cross Country, which markets itself to consumer-oriented financial companies such as Ocwen that have

---

[4] http://www.sec.gov/Archives/edgar/data/873860/000087386014000015/a2014033110q a.htm (last visited Oct. 3, 2014).

large customer bases. Cross Country, a self-described "leading provider of home warranties, home service plans and home maintenance plans," approaches these companies with the promise of a new joint enterprise that can enhance their bottom line.

16.     Cross Country has no qualms in advertising its services to partners like Ocwen. A section of its website titled "Financial Solutions by CCHS," provides an explanation of how Cross Country "Supports Finance and Insurance Partners."[5] That section explains how Cross Country's programs can "increase revenue" and help the "bottom line" of companies like Ocwen:

> [ **POS And Add-On Opportunities** ]
> Our point-of-sale and add-on products enhance your brand, create deeper connections with customers and increase revenue. CCHS home service plans naturally fit with the products and services you already provide and create long-term impact to your bottom line.[6]

17.     Cross Country meets this vision by selling a variety of home warranties, maintenance, assistance, and related plans. It describes its home warranties as "[p]rotection plans designed to address the mechanical failure of major home systems (such as air conditioning units, furnaces, or hot water heaters)."[7] Cross Country's home warranties are sold under the names TotalProtect® Residential MD® and Home Protect®.[8]

---

[5] http://www.cchs.com/financial-solutions (last visited Oct. 3, 2014).

[6] *Id.*

[7] http://www.cchs.com/documents/10180/42591/CCHS_Fact_Sheet_102013.pdf/0d5186b0-7883-4819-a8c8-1d3de7a2ef58 (last visited Oct. 3, 2014).

[8] *See* http://www.cchs.com/home-warranties (last visited Oct. 3, 2014).

6

18.     Even after consumers are unwittingly enrolled in one of the Cross Country products, Ocwen continues to disguise the true nature of these third party charges. The charges will often appear on monthly Ocwen mortgage statements as a "PREM – Cross Country Home Services" fee or similar ambiguous charge.

19.     Nor did Defendants intend that the consumers, including Plaintiff Fox (who unwittingly endorsed the check), would actually utilize the "home warranty" or "services" that were being purchased. Defendants did not provide consumers with instructions as to how to process a warranty claim, and if any such materials were ever conveyed to the members of the class, such conveyance was done in a manner that did not distinguish those materials from junk mail. The entire business model used by Defendants was a well-orchestrated sham. Rather than use a conventional means of communicating an offer to provide services to consumers accompanied by a full explanation of what those services entailed and what they would cost (and an enrollment confirmation), as would be done by a reputable commercial enterprise, Defendants employed deception and sleight-of-hand to induce consumers to unwittingly "contract for" Defendants' services solely for the purpose of generating a stream of income for Defendants with no likely prospect that Defendants would ever be called upon to deliver those services since the consumers were unaware they had contracted for those services.

B.    Facts Applicable to Plaintiff Fox.

20.    On or around June 3, 2013, Plaintiff Fox and her husband received a check in the mail in an envelope that appeared to be from Ocwen. The image of the check, in the amount of $4.00, appears below:



21.    Only on the back of the check – in fine print and vaguely worded language – does the check indicate that by endorsing it, Plaintiff was actually buying "an annual Residential md Gold Home Service Plan."  The images of the back of this check, which was endorsed by Plaintiff Fox, are on the next page, the image on the left is the actual size and the image on the right is scaled up in size:



By cashing or depositing this check, I understand that I am purchasing an annual Residential MD Gold Home Service Plan and understand that $54.95 per month will automatically be charged to my Ocwen Loan Servicing mortgage payment unless I cancel my Plan by calling toll-free 1 877 880 1634 within 30 days from the date this check is cashed or deposited.I understand that this is an annually renewable Plan and the monthly cost of $54.95 will continue to be collected with my monthly mortgage payment until I cancel the Plan

Signature of payee required for processing.



By cashing or depositing this check, I understand that I am purchasing an annual Residential MD Gold Home Service Plan and understand that $54.95 per month will automatically be charged to my Ocwen Loan Servicing mortgage payment unless I cancel my Plan by calling toll-free 1 877 880 1634 within 30 days from the date this check is cashed or deposited.I understand that this is an annually renewable Plan and the monthly cost of $54.95 will continue to be collected with my monthly mortgage payment until I cancel the Plan

Signature of payee required for processing.

22.     The language on the back of the check does not say anything about Defendant Cross Country Home Services, and the front of the check only lists "CCHS" in the top left corner.

23.     Unbeknownst to Plaintiff Fox, after endorsing and cashing this check which she believed to be sent to her from Ocwen, she was actually enrolling in Cross Country Home Service's "Residential Gold MD" product. As such, beginning in or around July of 2013, Ocwen began adding a monthly fee to her mortgage statement.

24.     Incredibly, Defendants charged Plaintiff Fox more for this service than the amount listed on the back of her check ($54.95 per month). For example, Plaintiff Fox's September 4, 2014 mortgage statement from Ocwen indicates that she was charged $58.80 for a line item of "Residential MD PREM – Cross Country Home Services." The pictures of this line item charge as it appeared on Plaintiff's

9

mortgage statement are below, the top image representing the actual size and the

bottom image scaled up in size:



25.     When Plaintiff eventually figured out that she was being charged this

mysterious line item fee, she called Ocwen to make an inquiry. After making

numerous calls to both Ocwen and a third party (HomeSure Services, Inc.), she

ultimately learned that she had been enrolled in Cross Country's "Residential MD

Gold" warranty program when she deposited the $4 check she thought was sent to

her by Ocwen.

26.     While Defendants did agree to stop charging this fee going forward,

they refused to provide a refund. HomeSure stated, in a letter to Plaintiff from dated

September 23, 2014, that "[a]t this time we must respectfully decline your request

for a refund as it applies to the Cancellation Provision stated in the Terms and

Conditions of your Service Agreement." The letter went on to explain that "[a]s

communicated at the time of enrollment, your acceptance would be forwarded for

processing, and the membership fee added to your account unless you call to cancel prior to the expiration of the 30 day review period."

27.  Plaintiff did not ever utilize any of the benefits purportedly offered by the Residential MD Gold plan and, indeed, did not even know that she had enrolled in this program. Moreover, Plaintiff already has homeowner's insurance and, therefore, had no reason to purchase an additional "home warranty." As a result of Defendants' deceptive conduct, Plaintiff has suffered monetary injury.

## C.   Similar Experiences by Other Consumers.

26.     Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same conduct, as evidenced by the examples set forth below:[9]

- "No valid contract should be triggered by depositing a check. This is an underhanded scam on unsuspecting people who mistake this check for an escrow refund check. OCWEN Mortgage took over my loan from GMAC. Around the same time I received this check that looked very much like an escrow refund check which I deposited. Soon after, my mortgage went up, but again I thought it had to do with changing Mortgage companies and OCWEN holding more in escrow than GMAC. Ironincally I could have used this insurance had I known I had it, but since I didn't and therefore didn't follow proper procedure they refused to reimburse me for any of the costs. I cancelled this policy Friday 10 months into it, and will be starting the process to change mortgage companies on Monday to a company with a lower rate. OCWEN should also be held accounable for partnering with a company that has to do business this way in order to get customers. AWFUL

---

[9] In addition to the complaints below, there is at least one other putative class action pending in another district against Ocwen and Cross Country that also challenges this conduct. *Delgado, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 1:13-cv-04427-NGG-RML (E.D.N.Y.).

marketing practices, and I would be more than happy to join a class action on this out of principal."[10] - E. C., San Jose - CA 06/07/14

- "In reviewing my mortgage payment history through Ocwen, I discovered an 'optional product' payment of $54.95 per month that it turns out I had been paying for 9 months. I never consciously did anything to enroll in this program and had never heard of Residential MD. Ocwen cancelled the policy but left me to deal with Residential MD on my own regarding past payments. (In that process I received some absolutely ABYSMAL customer service from Ocwen). I am in the midst of dealing with Residential MD now (they claim to need 21 business days to look into my case), and it's not clear how it will turn out, but if I get anything less than a full refund, I will do everything in my power to make life miserable for them. On the other hand, if they come back with a refund and full explanation I will repost here. The postings here lead me to believe this will not turn out well."[11] - John Berlind, Burlington - All 05/31/14

- "I have also just discovered the fraudulent behavior of Ocwen and Residential MD. The $54.95 charge was added to my mortgage bill during the annual re-calculation of the escrow amount last year. I just looked through my checkbook and found that I deposited $4 as "refund from Ocwen escrow." That's probably the bogus charge. I have emailed Residential MD's customer service address. I will be calling Ocwen and Residential MD tomorrow, and I am in the process of filling out an online complaint with the state attorney general's office."[12] -Jennifer Hendricks, Boulder - CO 06/15/14

- "Found out when I finally got a paper statement through Ocwen they had been detucting 54.95 a month since June 2013 without my permission. When I called after talking to several people they said they would investigate how I supposedly signed up. 'Sometimes by not responding to a vendor, the assumes that you accepted the coverage.' ARE YOU kidding me? They are not refunding but I will be talking to a lawyer.'"[13] - Joanne McKinnon, Knoxville - TN 05/21/14.

- "I like many people here cashed an obscure check for 3:50 thinking it was an escrow refund or something. Never explicitly signing up for any warranty plan. Definitely a scam that OCWEN seem compliant in. Would be

---

[10] http://www.homewarrantyreviews.com/reviews/residential-md-home-warranty (last visited Oct. 3, 2014).

[11] *Id.*

[12] *Id.*

[13] *Id.*

interested in pursuing a lawsuit with other interested parties(jmotler@msn.com)."[14] - John Motler, Littleton - CO 04/17/14.

- "They got me too. $54.95 a month since last July. OCWEN is part of this mortgage fraud along with Residential MD. and should be hit with a class action law suit. Ocwen gave me a work order # for their investigation into providing a refund. I asked for proof of authorization a month ago and I have not yet been informed that I cashed a check for $3.50--but I might have. SCAM is right. After all the dirty dealings and mortgage co. failures and fallouts, you would think they would try to run a clean ship. HAH!! The honest dollar is only enough for the honest man."[15] -richard frizell, philadelphia - PA 04/07/14.

## CLASS ACTION ALLEGATIONS

27.    Plaintiff brings this action individually, and on behalf of a class,

pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, she seeks to

represent the following Nationwide Class with respect to her federal RICO claim:

> All persons and entities in the United States who have or had a mortgage serviced by Ocwen, and were enrolled in a Cross Country Home Warranty, Residential MD, Total Protect, Home Protect, or similar product sold by Cross Country (the "Nationwide Class").

28.    In addition to the above Nationwide Class, Plaintiff also seeks class

certification of the following New Jersey class with respect to each of the state law

claims asserted herein:

> All persons and entities in New Jersey who have or had a mortgage serviced by Ocwen, and were enrolled in a Cross Country Home Warranty, Residential MD, Total Protect, Home Protect, or similar product sold by Cross Country (the "New Jersey Class").

---

[14] *Id.*
[15] *Id.*

13

As set forth below, both the Nationwide Class and New Jersey Class satisfy the applicable Rule 23 requirements:

29.   <u>Numerosity</u>:  The Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual Class Members are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes that thousands of class members have been fraudulently enrolled into a Cross Country Home Warranty, Residential MD, Total Protect, Home Protect, or similar product sold by Cross Country.

30.   <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions or law and fact exist as to all Class Members.  These questions predominate over the questions affecting individual Class Members.  These common legal and factual questions include, but are not limited to:

a.   Whether Defendants' conduct was materially misleading.

b.   Whether Defendants failed to disclose material information to Plaintiff and the Class.

c.   Whether a valid contract exists with Defendants.

d.   Whether signing and returning the checks was sufficient to manifest assent to enroll in one of Cross Country's programs.

e.   Whether the language on the checks sent by Defendants would mislead a reasonable consumer.

  f. Whether the Defendants' conduct violated RICO, the NJCFA, and other claims asserted by Plaintiff.

  g. Whether Defendants should be ordered to cease this deceptive conduct, or otherwise modify it.

  h. The extent and measurement of classwide damages, and nature of other appropriate relief.

31. <u>Typicality</u>:  The claims of Plaintiff are typical of the claims of the Class in that Plaintiff, like all Class Members, was deceptively enrolled into a Cross Country Home Warranty, Residential MD, Total Protect, Home Protect, or similar product sold by Cross Country.  Furthermore, the facts related to Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to all Class Members.

32. <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members.  Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer fraud class actions involving consumer fraud, and Plaintiff intends to prosecute this action vigorously.

33. <u>Superiority</u>:  Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size

of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

34.     Defendants have acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### RACKETEER  INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO)
### (18 U.S.C. § 1962(c))
### On Behalf of the Nationwide Class
### Against All Defendants

35.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

36.     Each Defendant is a person within the meaning of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

37.     At all relevant times, in violation of 18 U.SC. §1962(c), the Cross Country Defendants and the Ocwen Defendants, as well as their agents and employees, conducted the affairs of an association-in-fact enterprise, as that terms is defined in 18 U.S.C. §1961(4). The affairs of this enterprise affected interstate commerce through a pattern of racketeering activity.

38.     This enterprise is an ongoing, continuing group or unit of persons and entities, associated together for the common purpose of maximizing profits by engaging in the fraudulent check solicitation scheme described herein.

39.     Defendants' systematic scheme to enroll Ocwen customers in one of the home warranty or service plans through the check solicitation scheme, as described above, was facilitated by the use of the United States mail and wire.  Defendants' scheme constitutes "racketeering activity" within the meaning of 18 U.S.C. §1961(1), as acts of mail and wire fraud under 18 U.S.C. §§1341 and 1343.

40.     Defendants used mail and wire in violation of 18 U.S.C. §§1341 and 1343 in furtherance of their scheme to defraud Ocwen's loan customers by using the check solicitation scheme to obtain money from customers using false and/or fraudulent and misleading pretenses.

41.     Through the mail and wire, the Ocwen Enterprise omitted material information about the check solicitations and plans, and sent misleading checks, deceptive marketing and solicitation pitches, false and misleading loan notices, escrow statements and mortgage statements, and other documents designed to lure customers into endorsing the solicitation checks and thereafter remain unaware as to the consequences of having deposited or cashed the checks.

42.     Defendants' checks concealed the true nature of their purpose and used ambiguous language, formatting, and print size to fraudulently induce Ocwen customers to cash or deposit the checks.

43.     Defendants' omissions and misrepresentations were material to Plaintiff and the members of the Class. Had Defendants made full, accurate and honest disclosures about the check solicitations, Plaintiff would have been aware of the deceit involved in obtaining her signature for the useless plans and would have challenged Defendants' unlawful assessments and billing practices, or would not have paid the monthly charges tacked on to her mortgage statements.

44.     Each of these omissions and/or misrepresentations constituted an act of mail and/or wire fraud for purposes of 18 U.S.C. §1341.

45.     Additionally, by using the internet, telephone and facsimile transmissions to communicate false and misleading information about the check solicitation scheme to customers in order to pursue and achieve their fraudulent scheme, Defendants engaged in repeated acts of wire fraud in violation of 18 U.S.C. §1343.

46.     In pursuing their check solicitation scheme, Defendants knowingly and fraudulently concealed and/or omitted material information from Plaintiff and members of the Class.

47.     The predicate acts specified above constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §§1961(5) and 1962(c).

48.     As a direct and proximate result of these violations of 18 U.S.C § 1962(c) and (d), Plaintiff and members of the Class have suffered substantial damages. Defendants are liable to Plaintiff and members of the Class for treble

18

damages, together with all costs of this action, plus reasonable attorneys' fees and costs under 18 U.S.C §§ 1964(c).

**COUNT II**
**RACKETEER INFLUENECED AND CORRUPT ORGANIZATIONS ACT -**
**CONSPIRACY TO VIOLATE 18 U.S.C.§ 1962(d)**
**On Behalf of the Nationwide Class**
**Against All Defendants**

49.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50.     As set forth above, in violation of 18 U.S.C. §1962(d) Defendants conspired to violate the provisions of 18 U.S.C. §1962(c).

51.     As set forth above, Defendants were aware of the nature and scope of the enterprise's unlawful scheme, and all agreed to participate in it.

52.     As a direct and proximate result of these violations of 18 U.S.C. § 1962(c) and (d), Plaintiff and members of the Class have suffered substantial damages and been injured in their business or property by the predicate acts which make up Defendants' pattern of racketeering activity that comprise the check solicitation scheme.

53.     Defendants are liable to Plaintiff and members of the Class for treble damages, together with all costs of this action, plus reasonable attorneys' fees and costs under 18 U.S.C. §§ 1964(c) and (d).

<u>COUNT III</u>
**VIOLATIONS OF THE NEW JERSEY CIVIL RICO ACT**
**(N.J. S**TAT**. A**NN**. 2C:41-1, *et seq.*)**
**On Behalf of the New Jersey Class**
**Against All Defendants**

54.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.     Defendants are an "enterprise" within the meaning of N.J. STAT. ANN. 2C:41-1c.

56.     Defendants are "persons" within the meaning of N.J. STAT. ANN. 2C:41-1b.

57.     Upon information and belief, Defendants engaged in a "pattern of racketeering" as follows: by knowingly, intentionally, willfully, fraudulently and unlawfully defrauding Plaintiff and similarly situated consumers by providing materially misleading checks to them, enrolling them in warranty programs that they did not agree to, and charging unauthorized fees.

58.     Each untrue statement of material fact and/or act of fraud or deceit upon Plaintiff and the numerous other members on the class constitutes a separate violation of N.J. STAT. ANN. 2C:204.

59.     As a result of this violation of N.J. STAT. ANN. 2C:41-2, Plaintiff and numerous other property owners who are similarly situated have been injured by Defendants.

60.     The injuries suffered by Plaintiff and the putative Class were proximately caused by Defendants violation of N.J. STAT. ANN. 2C:41-2.

<u>COUNT IV</u>
## CIVIL CONSPIRACY
### On Behalf of the New Jersey Class
### Against All Defendants

61.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.    Defendants acted in concert, pursuant to an actual agreement or confederation in common design when they undertook to provide Plaintiff and similarly situated consumers with the materially misleading checks.

63.    The purpose of Defendants' concerted action was to unlawfully and deceptively enroll Plaintiff and other consumers in warranty programs.

64.    Defendants' conspiracy and concerted actions have directly and proximately caused the Plaintiff and the Class members' damages. As a direct and proximate result of Defendants' conspiracies and/or concerted actions perpetrated upon Plaintiff and the Class, Defendants are jointly and severally liable to Plaintiff and the Class for all damages Plaintiff and the Class have sustained, plus exemplary damages and, punitive damages, as well as the cost of suit and reasonable attorneys' fees.

<u>COUNT V</u>
## VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA")
### N.J. STAT. ANN. § 56:8-1 *et seq.*
### On Behalf of the New Jersey Class
### Against All Defendants

65.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

66.     Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the New Jersey Class against Defendants.

67.     The NJCFA was enacted to protect citizens from deceptive, fraudulent, and misleading commercial practices and makes such practices unlawful.

68.     The aforementioned unlawful, false, deceptive, and misleading statements and material omissions by Defendant constitutes a violation of N.J. STAT. ANN. § 56:8-2.

69.     The aforementioned unlawful, false, deceptive, and misleading advertisements by Defendant constitute a violation of N.J. STAT. ANN. § 56:8-2 because Defendant knowingly omitted and concealed material facts regarding their checks and warranty programs, and Defendant knew that Plaintiff and the Class would rely on such omissions and concealments.

70.     The aforementioned unlawful, false, deceptive, and misleading advertisements and solicitations by Defendants constitutes a violation of N.J. ADMIN. CODE § 13:45A-9.2(a)(9) because the advertisements were a "false or misleading representation of facts concerning the reasons for, existence or amounts of price reductions, [and] the nature of an offering."

71.     Defendants' advertisements and solicitations also violated the NJCFA because they contained materially misleading (and false) statements, and omitted material information.

72.     As a result of Defendants' conduct, Plaintiff and Class members have suffered an ascertainable loss in the form of direct monetary losses.

73.    A causal relationship exists between Defendants' unlawful, false, deceptive, and misleading conduct and the Plaintiff's and the putative Class' injuries, including, but not limited to, Defendants' checks and warranty programs. Had Defendants not engaged in the aforementioned deceptive conduct, Plaintiff and the putative Class' would not have enrolled in these warranties.

74.    Notice of this lawsuit is being provided to the New Jersey Attorney General as required by N.J. STAT. ANN. § 56:8-20.

**COUNT VI**
**VIOLATIONS OF THE NEW JERSEY TRUTH-IN-**
**CONSUMER CONTRACT, WARRANTY AND NOTICE**
**ACT, N.J. STAT. ANN. § 56:12 *et seq.* ("TCCWNA")**
**On Behalf of the New Jersey Class**
**Against All Defendants**

75.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

76.    Plaintiff brings this cause of action on behalf of herself and on behalf of the members of the New Jersey Class against Defendants.

77.    To the extent there were contracts formed between Defendants and Plaintiff and the Class, the terms of such contracts were not "written in a simple, clear, understandable and easily readable way" in violation of N.J. STAT. ANN. § 56:12-2.

78.    The TCCWNA entitles Plaintiff and the Class to recover their actual damages and $100.00, together with reasonable attorney's fees and court costs pursuant to N.J. STAT. ANN. § 56:12-2.

79.  As a result of Defendants' conduct, Plaintiff and the Class have suffered an ascertainable loss in the form of direct monetary losses.

80.  A causal relationship exists between Defendants' unlawful, false, deceptive, and misleading conduct and the Plaintiff's and the Class' injuries, including, but not limited to, the cost of warranty programs for which they were charged.

**COUNT VII**
**BREACH OF THE DUTY OF GOOD FAITH**
**AND FAIR DEALING**
**On Behalf of the New Jersey Class**
**Against All Defendants**

81.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

82.  Every contract in New Jersey contains an implied covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

83.  Defendants breached the covenant of good faith and fair dealing by, *inter alia*, fraudulently subjecting them to the check-cashing scheme.

84.  Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class members the benefit of the bargain intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT VIII
## BREACH OF FIDUCIARY DUTY
### (On Behalf of the New Jersey Class)
### Against the Ocwen Defendants Only

85.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86.     While acting as a loan servicer, the Ocwen Defendants owed Plaintiff and the Class all of the duties of fiduciaries.

87.     The Ocwen Defendants violated their fiduciary duty to Plaintiff and the Class when they enacted, administered and profited from the check solicitation scheme.

88.     The Ocwen Defendants breached their fiduciary duty to Plaintiff and the Class by, *inter alia,* (1) not acting in their own best interest when the Ocwen Defendants enacted, administered and profited from the check solicitation scheme, (2) not disclosing the check solicitation scheme to Plaintiff and the members of Class, and (3) increasing their customers' monthly mortgage bills without their mortgagors' consent.

89.     These actions were undertaken by the Ocwen Defendants in bad faith for their own benefit and were not intended to benefit Plaintiff and the Class.

90.     As a direct result the Ocwen Defendants' actions, and their subversion of their customers' interest to the Ocwen Defendants' own interests in reaping exorbitant fees, Plaintiff and the Class have suffered injury in the form of unnecessary and excessive charges.

91.     Plaintiff and the Class are entitled to damages for the Ocwen Defendants' breach of their fiduciary obligations. In addition, Plaintiff and the Class are entitled to punitive damages because the Ocwen Defendants acted in bad faith in deliberate or reckless disregard of their fiduciary obligations.

**COUNT IX**
**UNJUST ENRICHMENT**
**On Behalf of the New Jersey Class**
**Against All Defendants**

92.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein. This claim is plead in the alternative to any of the contractual based claims pursuant to FED. R. CIV. P. 8.

93.     As a result of Defendants' deceptive, unlawful, and unfair conduct, they have been enriched at the expense of Plaintiff and the Class through the collection of unauthorized fees associated with their home warranty and similar home service and maintenance plans. Defendants have been enriched by increasing Ocwen customers' monthly mortgage bills without the consent of the mortgagors.

94.     By collecting improper fees for home warranty and similar home service plans as a result of their check solicitation scheme, Defendants have benefited from receipt of these illicit charges, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

95.     As a result of Defendants' collection of charges stemming from their check solicitation scheme, it would be unjust and/or inequitable for Defendants to retain the benefits of the scheme without restitution to Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)     Issue an order certifying the Classes defined above, appointing the Plaintiff as Class representative, and designating the undersigned firm as Class Counsel;

(b)     Find that Defendants have committed the violations of law alleged herein;

(c)     Enter an order granting monetary relief and treble damages on behalf of the Class under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c) and (d) *et seq.*;

(d)     Determine that all Defendants have been unjustly enriched as a result of their wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Class;

(e)     Determine that the Ocwen Defendants have violated their fiduciary duty to the Class and enter an appropriate order awarding monetary and injunctive relief;

(f)     Render an award of compensatory damages, the amount of which is to be determined at trial;

(g)     Render an award of punitive and/or treble damages;

(i)     Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(k)     Grant all such other relief as the Court deems appropriate.

Dated:  October 16, 2014                    Respectfully submitted,

By:

**CHIMICLES & TIKELLIS LLP**
Nicholas E. Chimicles
Benjamin F. Johns (NJ Bar No. 03818-2005)
Joseph B. Kenney (NJ Bar No. 08558-2013)
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
E-mail:
Nick@chimicles.com
BFJ@chimicles.com
JBK@chimicles.com

*Attorneys for Plaintiff and the Class*